UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

UNITED STATES OF AMERICA

           V.

WAYNE WRIGHT,

        Defendant.

————————————————————————————x

17 CR 695 (CM)

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

Wayne Wright is currently serving an eight months' sentence in the Metropolitan Correctional Center for violating the terms of supervised release. He is scheduled to be released on June 27, 2020.

On April 1, 2020, Wright submitted a request to the Warden at the MCC seeking reduction in his sentence or to serve the remainder of the sentence on home confinement. To the Court's knowledge, the Warden has not acted on his request

On April 3, 2020, Wright filed a motion in this court asking to be released on compassionate release grounds pursuant to 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 health crisis. Wright argues that (1) the conditions at the MCC places him in peril of contracting COVID-19, and (2) although he is only 35 years old, he suffers from diabetes and other medical issues that place him in a high-risk category for having a severe outcome if he were to contract the virus. Wright concedes that he has failed to exhaust his administrative remedies with the

1

Bureau of Prisons, but argues the Court can construe the exhaustion requirement as "futile." (Mot. at 4.)

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582 (c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, ___ F.3d ___, 2020 WL 1647922, at * (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The vast majority of district courts have also required

2

exhaustion despite COVID-19 claims.[1] These decisions are consistent with the plain language of Section 3582(c).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that

---

1 *See United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020); *United States v. Clark,* No. 17 Cr. 85 (SDD), 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart,* No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). Both *Perez* and *Colvin* relied on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), which as discussed further below, is inapposite because it involves judge-made exhaustion doctrine.

it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The court may of course review those judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment.

The defendant primarily relies on *United States v. Perez*, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) to contend that the requirement can be waived under certain circumstances. Judge Torres's decision in *Perez* relies primarily on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019) to justify excusing exhaustion under Section 3582(c). *Washington*, however, is inapposite. *Washington* involved the invocation of a *judge-made* exhaustion doctrine. *See id.* at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); *id.* at 118 ("Although not mandated by Congress, [exhaustion] is consistent with congressional intent."). Thus, it was appropriate for the court to consider judge-made exceptions. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). But this case involves a mandatory, statutory exhaustion requirement, which allows for no such exceptions. *See Bastek v. Fed. Crop Ins. Corp., 145 F.3d*

4

*90, 95 (2d Cir. 1998)* (rejecting application of various exceptions to exhaustion requirement where clear statutory requirement exists); *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004) (rejecting futility exception to exhaustion requirement in Immigration and Nationality Act because such an exception is "simply not available when the exhaustion requirement is statutory," as opposed to judicial); *United States v. Gonzalez-Roque*, 301 F.3d 39, 46-48 (2d Cir. 2002) (rejecting argument that statutory exhaustion requirement for collaterally attacking a removal order should be excused in light of defendant's *pro se* status in removal proceedings).

To be sure, *Washington* states that: "Even where exhaustion is seemingly mandated *by statute or decisional law*, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of categories.'" *Washington*, 925 F.3d at 118 (emphasis added) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). But the inclusion of the phrase "by statute" is not supported by the citation that follows. *McCarthy* is another case involving a judge-made exhaustion requirement. *See McCarthy*, 503 U.S. at 152 ("Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim."). It thus provides no support for the notion that exhaustion mandated "by statute" is not absolute. *See Bastek*, 145 F.3d at 95 (rejecting application of *McCarthy* exceptions in a statutory case). Further, when *Washington* goes on to discuss three recognized exceptions to exhaustion, it is describing three exceptions recognized in *McCarthy* in the judge-made context. But as the Supreme Court made crystal clear in *Ross*, this ignores the critical distinction between statutory and judge-made exhaustion requirements. Given that *Washington* was a judge-made exhaustion case, its statement that exhaustion mandated "by statute" is "not absolute" is dicta, and cannot supplant the clear statements to the contrary in cases like *Ross* and *Bastek*.

5

Thus, I decline to follow Judge Torres reasoning. I agree with my colleague, The Honorable Jesse Furman, who concluded, in *United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020), that compliance with a statutorily imposed exhaustion requirement could not be waived by a court in the absence of the government's consent.

Even if the defendant had met the requirements for filing, he has not demonstrated that a sentencing reduction is warranted. A defendant's medical condition may justify a sentencing reduction if (a) the defendant has a "terminal illness" or (b) the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and [is a condition] from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A).

As a basis for relief, the defendant cites his diabetes and medical issues. (Mot. at 1.) Indeed, according to CDC guidelines, the defendant's diabetes places him at an elevated risk for a severe case of COVID-19.[2] But diabetes is not a terminal illness, which is defined as "a serious and advanced illness with an end of life trajectory," such as "metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13, Application Note 1(A)(i). Nor has the defendant shown that his medical conditions "substantially diminish" his ability to provide self-care. *See id.*, Application Note 1(A)(ii).

The COVID virus, of course, presents new and complex challenges for protecting inmates' health, but it is not clear that the defendant is actually at any greater risk of contracting

---

[2] *See:* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higherrisk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecificgroups%2Fhigh-risk-complications.html.

6

the virus inside the MCC than outside the MCC. Reports this Court has received—in its capacity as the Chief Judge for this district—from the Warden of the MCC indicate that the BOP has been successful at limiting the spread of the virus within the MCC. That result is possibly explained by the fact that, despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that Wright would be at any less of a risk from contracting COVID-19 if he were to be released.

The motion is denied.

That said, if the Warden of the MCC were to conclude that it made sense to reduce inmate population at the MCC to contain the treat of COVID virus, Wright—who has but two months remaining on his sentence—would probably be an appropriate candidate for release, and the Court would certainly have no objection to his release on that basis.

Dated: April 20, 2020

_____
Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES

7